**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANN M. MOGENHAN,
184 Kendrick Place, Unit 16
Gaithersburg, MD 20878

Plaintiff,

v.

R. JAMES NICHOLSON, Secretary,
U.S. Dep't of Veterans Affairs,
810 Vermont Avenue, N.W.
Washington, D.C. 20420
Defendant.

Civil Action No. 06-2041 (GK)

**JURY TRIAL DEMANDED**

**AMENDED COMPLAINT FOR DISCRIMINATION**

1. Plaintiff Ann Mogenhan, by and through undersigned counsel, hereby files this civil action against Defendant James Nicholson, as head of the U.S. Department of Veterans Affairs, pursuant to Title VII of the Civil Rights Acts of 1964, as amended, 42 U.S.C. § 2000e et seq. Plaintiff seeks relief pursuant to Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for harms caused to Plaintiff when Defendant subjected her to a hostile work environment based on her race (white), gender (female); and also retaliated against her because of prior EEO activity.

2. Plaintiff requests as relief: an immediate accretion

of duties to GS-15 level and equivalent work provided and a corresponding reassignment; back pay and back-dated awards; maximum compensatory damages; declaratory and injunctive relief, including corrections to her performance appraisals; and attorney fees, costs, and expenses, in order to remedy Defendant's unlawful acts.

**PARTIES**

3. Plaintiff Ann Mogenhan, a United States citizen, is a white female and a federal employee with over 20 years of government service. Since October 8, 2000, Ms. Mogenhan has been an Administrative Officer, GS-341-14, at the U.S. Department of Veterans Affairs, Veterans Health Administration ("VHA"), Office of Financial Management and Accounting Systems ("OFMAS"). For the entire period relevant to this action, Ms. Mogenhan has been employed as the Executive Assistant to the Associate CFO for Financial Management and Accounting Systems. She resides at 184 Kendrick Place, Unit 16, Gaithersburg, MD 20878.

4. Defendant James Nicholson is Secretary of the U.S. Department of Veterans Affairs and the head of the VHA, and as such, has ultimate authority over the actions of the VHA. Defendant is sued in his official capacity only. His address is 810 Vermont Ave, N.W., Washington, DC 20240.

**JURISDICTION AND VENUE**

5.   This Court has jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. § 1331.

6.   Specifically, this Court has jurisdiction over this Complaint pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. § 2000e-16(d), and 42 U.S.C. § 1981a.

7.   This Court is the proper venue pursuant to 42 U.S.C. § 2000e-5(f)(3). Plaintiff's office is located in Washington, D.C., and all of her supervisors and managers are located in Washington, D.C. The discriminatory acts complained of took place in Washington, D.C. Furthermore, all records, documents, and virtually all the witnesses relevant to this Complaint are located in Washington, D.C.

8.   The facts underlying Ms. Mogenhan's Complaint were developed, in part, through three formal administrative Equal Employment Opportunity ("EEO") discrimination complaints which she timely initiated between 2001 and 2005 and has been fully exhausted. Ms. Mogenhan's first Formal EEO Complaint (Agency No. 2004-0010-2002100209) was filed on December 20, 2001; her second Formal EEO Complaint (Agency No. 2004-0010-2005100825) was filed on March 23, 2005; and her third Formal EEO Complaint (Agency No. 2004-0010-2006100280) was filed on December 19,

2005. Ms. Mogenhan's second and third EEO Complaints are still pending at the EEOC or with the Agency, but were filed more than 180 days after filing her formal EEO complaints. See 42 U.S.C. § 2000e-16(c). Plaintiff received a Final Decision from the EEOC Office of Federal Operations on her first Formal EEO Complaint on August 3, 2006, and she is filing this Complaint within 90 days of that date.

**FACTS**

9. Ms. Mogenhan is a highly qualified, well-educated federal employee, who has had a successful career in both the federal service and private sector.

10. Ms. Mogenhan has a Bachelor of Science in Business from John Hopkins University (2003), she has participated in Senior Executive Program training through George Washington University, and she graduated from the Department of Agriculture Graduate School after participating in their Executive Potential Program (2000).

11. Ms. Mogenhan worked in the private sector for ten years, and she has had more than 20 years of service in significant positions with various federal agencies. Her professional experience includes work at the Resolution Trust Corporation, the U.S. House of Representatives, the U.S. Office

of Personnel Management, and the National Cemetery Administration as a Senior Management Analyst.

12. As Administrative Officer for the OFMAS, Ms. Mogenhan ought to be responsible for being the "alter-ego" to the Associate Chief Financial Officer for Financial Management and Accounting Systems by providing advice and counsel on various issues, including personnel management, budget and financial management, procurement and contracting, executive correspondence, and communications, property management and supplies.

13. Ms. Mogenhan is a stellar employee based upon her performance ratings and awards received prior to October 2000. She has been awarded several performance-based recognitions, including the Sustained Superior Performance Award, the Special Contribution Award, and Exemplary Performance Award. She is a Carey examiner and has been trained to use Baldridge criteria to do Carey and Baldridge award reviews.

14. Despite Ms. Mogenhan's solid education, varied experience, and stellar performance, she was subjected to discrimination and retaliation by her first-level supervisor, Associate Chief Financial Officer David Rutledge (white male; no prior EEO activity), and her Supporting second-level supervisor, Chief Financial Officer Jimmy Norris (white male; no prior EEO

activity), who subjected her to disparate treatment and a hostile work environment. Specifically, Mr. Rutledge, with Mr. Norris' support, subjected Ms. Mogenhan to severe and pervasive mistreatment and relegated menial and clerical duties unrelated to her professional qualifications and position description while conversely assisting similarly situated males with favorable detail assignments, plum committee assignments, and extensive professional training.

15. In addition to the formal EEO complaints contained herein, Ms. Mogenhan has previously filed and successfully prosecuted other EEO Complaints, and Mr. Rutledge and Mr. Norris knew about these prior protected activities.

16. Ms. Mogenhan was unlawfully discriminated against on the basis of gender discrimination and retaliation for filing prior EEO complaints as set forth below in paragraphs 17-33. There is an element of unlawful race discrimination in this case as well.

17. Ms. Mogenhan was discriminated and retaliated against when, beginning in October 2000 and continuing thereafter, her supervisors denied her the opportunity to perform job duties consistent with her position description, grade level, and series.

18. Ms. Mogenhan was discriminated and retaliated against when, beginning in October 2000 and continuing thereafter, her supervisors subjected her to disparate pay by paying her at the GS-14 level as an Administrative Officer, but requiring her to perform duties equivalent to similarly situated male employees, who were paid at the GS-15 level and occupied Operations Officer positions.

19. Ms. Mogenhan was discriminated and retaliated against when, beginning in October 2000 and continuing thereafter, her supervisors encouraged and rewarded employees for circumventing her and sending materials directly to Mr. Norris for approval.

20. Ms. Mogenhan was discriminated and retaliated against when, on or about September 21, 2001, Mr. Rutledge verbally assaulted her about a written nomination package she had submitted; he did not speak to similarly situated male employees in the same manner.

21. Ms. Mogenhan was discriminated and retaliated against when, on or about October 26, 2001, Mr. Rutledge verbally assaulted her about her absence from a staff meeting; he did not speak to similarly situated male employees in the same offensive manner.

22. Ms. Mogenhan was discriminated and retaliated against

when, April 2002, her supervisors denied her an award for her work; similarly situated male employees were given significant monetary awards for their work.

23. Ms. Mogenhan was discriminated and retaliated against when, beginning in April 2003 and continuing thereafter, her supervisors prevented her from performing her regular duties relative to office reorganizations/realignments and prevented her from attending and participating in meetings related to her duties.

24. In 2004, Ms. Mogenhan was discriminated and retaliated against when her supervisors denied training dollars to fund her participation in an SES developmental course. Ms. Mogenhan had to pay for this training course herself. By contrast, training money was budgeted for Pat Kane, a similarly situated male employee to attend such a training program.

25. Ms. Mogenhan was discriminated and retaliated against when, in July 2004, Mr. Rutledge refused to conduct her mid-year performance review.

26. Ms. Mogenhan was discriminated and retaliated against when, on or about November 16, 2004, Mr. Rutledge and Mr. Norris issued her an unfavorable performance evaluation for the rating period of October 1, 2003 through September 30, 2004.

27. Ms. Mogenhan was discriminated and retaliated against when, beginning in November 2004 and continuing thereafter, her supervisors issued her lower award than similarly situated male coworkers.

28. Ms. Mogenhan was discriminated and retaliated against when, beginning in November 2004 and continuing thereafter, her supervisors assigned her duties that were clerical in nature at the GS-5 and GS-6 level.

29. Ms. Mogenhan was discriminated and retaliated against when, beginning in November 2004 and continuing thereafter, her supervisors denied her the training opportunities she properly requested in her Individual Developmental Plan.

30. Ms. Mogenhan was discriminated and retaliated against when, beginning in November 2004 and continuing thereafter, Mr. Rutledge and Acting Associate Chief Financial Officer Almetta Moore, directed vulgar language toward Plaintiff, which was harsher and more abusive than language they directed as similarly situated male coworkers.

31. Ms. Mogenhan was discriminated and retaliated against when, she began her employment with the Agency and continuing at all times thereafter, her supervisors subjected her to disparate pay in violation of the Equal Pay Act by paying her at the GS-14

level and assigning her three major task areas, but paying male employees at the GS-15 level and assigning them only one major task area.

32. Ms. Mogenhan was discriminated and retaliated against when, in November 2004, her supervisors refused to accommodate her request for a private office based on her severe, medically documented migraine headaches, which were exacerbated by her office environment (open work area without temperature control).

31. Ms. Mogenhan was discriminated and retaliated against when, on or about October 18, 2005, Mr. Norris criticized her and other females employees during a mandatory meeting for unprofessional behavior in failing to communicate through the formal chain of command; he did not criticize similarly situated male coworkers.

32. Ms. Mogenhan was discriminated and retaliated against when, on or about October 20, 2005, Mr. Rutledge gave her a lower performance rating than what her work merited, and on or about November 1, 2005, Mr. Norris refused to change the rating and added additional false comments.

33. Ms. Mogenhan was discriminated and retaliated against when, in November 2005, her supervisors required her to attend meetings about re-writing of her job description, but similarly

situated male employees were not treated in the same way in regards to the evaluating of their job duties.

## CAUSES OF ACTION

### Count I: Hostile Work Environment

34. Based upon the facts described above, Defendant unlawfully discriminated against Plaintiff on the basis of retaliation against her for her prior protected EEO activity and on the basis of her gender (female) by subjecting her to a hostile work environment, in violation of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq.

### Count II: Disparate Treatment

35. Based upon the facts described above, Defendant unlawfully discriminated against Plaintiff on the basis of her gender (female) and retaliated against her on the basis of her prior protected EEO activity by subjecting her to disparate treatment, in violation of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq.

### Count III: Adverse Personnel Actions

36. Based upon the facts described above, Defendant unlawfully discriminated against Plaintiff Ann Mogenhan on the basis of her race (white) and gender (female) and retaliated against

her on the basis of her prior protected EEO activity by subjecting her to adverse personnel actions, in violation of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq.

**RELIEF REQUESTED**

37. Plaintiff requests any and all relief available under Title VII of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a, and civil rights law, including but not limited to the following:

a. An immediate promotion to the GS-15 level based upon accretion of duties and equivalent work provided and a corresponding reassignment outside of the VHA Office of Finance;

b. Full back pay, with interest, benefits, and retroactive awards for the period of Plaintiff's discriminatory/ retaliatory work at the GS-15 level;

c. Maximum compensatory damages to which Plaintiff is entitled after proof at trial (maximum of $300,000);

d. Declaratory and injunctive relief, including appropriate record correction consistent with the facts of this case and the above-requested relief;

e. An Injunction enjoining Defendant from discriminating or retaliating against any employee, including Plaintiff with appropriate notices of the Injunction posted at Plaintiff's

place of work;

f. The reasonable attorney fees at prevailing market (Laffey) rates, costs, and expenses of this action; and

g. Such other relief as the Court deems just and appropriate.

**JURY TRIAL**

38. Plaintiff requests a trial by jury on all issues that are triable by jury.

Myrrel C. Hendricks Jr.
JOSEPH D. GEBHARDT
(D.C. Bar No. 113894)
MYRREL C. HENDRICKS, JR.
(D.C. Bar No. 291781)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

January 17, 2007

Attorneys for Plaintiff